Next case in our call today is agenda number 23, case number 108855, People of State of Illinois v. Dennis Ligon. My name is Patrick Cassidy. I represent the defendant appellant in this case, Dennis Ligon. Your Honors, ultimately what Mr. Ligon seeks here is an adjudication of ineffectiveness claims he raised on direct appeal but that the appellate court refused to resolve in favor of them being resolved in the post-conviction process. Now we argue that if direct appeal claims are going to be moved to another process, then counsel has got to move along to that process with those claims. But we believe the simplest way to resolve this case here and to give Mr. Ligon the counsel appellate review to which he was entitled is to issue a supervisory order remanding to the appellate court for an adjudication of the merit to these claims. And we believe that's appropriate here, especially appropriate for two reasons. One, the appellate court has since recognized that its refusal to adjudicate these claims on direct appeal was based on a misapprehension of the record. And two, these claims have substantial merit to them and deserve an adjudication. Your Honors, Mr. Ligon was facing a mandatory natural life sentence, one that he is now serving, if convicted of the charge in this case of aggravated vehicular hijacking. His trial attorney promised the jurors an opening statement that they were going to hear a classic case of misidentification. Counsel told them they were going to see Mr. Ligon's son, Dennis Compton, who counsel said was the lookalike of his father, the defendant, and that they were going to hear his testimony and that after that they were going to have more than sufficient doubt in order to acquit. So in other words, what trial counsel here did was promise the jurors a Perry Mason moment. They were going to bring in the real culprit. And jurors naturally were waiting for this moment throughout the trial. But that moment never came. Counsel did not- Before we get into that, there were, the appellate court concluded on direct appeal that there were two unresolved, there were two unresolved ineffective assistance of counsel claims that were to whore the record, right, and could not be decided by that court? The appellate court believed that there was a certain piece of information that was lacking in the record. Right. Correct. And I have another question, maybe for a later time, that that seems to be on some misinformation that was given to the appellate court. But regardless, why isn't that ruling res judicata? I believe the ruling became final in 2006 when this court denied leave to appeal on that issue, right? Now you're asking us to issue a supervisory order back to the appellate court to hear those matters? Well, we believe, we are asking this court to do that because we think it's the simplest way to do, to avoid the constitutional argument here. But we, I do want to clarify, we don't, we're not saying we're entitled to supervisory relief in any way here. We're saying we are entitled to counsel under our secondary, our second argument under the federal constitution. But we think that the supervisory relief would dispose of this case justly and cleanly and not, and quickly. But we don't think we're entitled to supervisory relief. But so at trial, counsel's made this promise. He doesn't come through with it in a prosecution. I'm sorry, have I answered your question? I'm sorry, Your Honor. So you're saying it's not res judicata or is res judicata? Well, our second, our constitutional argument depends in no way on whether, any doctrine of forfeiture. Because the key fact here is that the appellate court did not deny these claims, did not expressly refuse to adjudicate them. That's what it said. And that's what our constitutional argument depends on. Once it did that, and sent them to be decided elsewhere, for whatever reason, counsel needed to go through that other process with those claims. Now, I point out in Ligon 2, the appellate court has since recognized that the piece of information it thought was lacking was, in fact, before it. As you point out, there was some confusion in the appellate briefing. But the appellate court in Ligon 2 seems ready and willing to adjudicate these claims on the merits. However, of course, this Court's objection, P.B. Jones, prevents it from doing so because these claims were not contained in the pro se petition. But the appellate court indicates that these claims are right for adjudication were this Court to remove that Jones barrier. Were there misstatements in the defendant's brief in the petition for re-hearing in his direct appeal? There were incorrect statements. But now, there were incorrect statements. And based on those incorrect statements, the appellate court on direct appeal was under the misapprehension that defense counsel did not speak with Compton until after the trial began, right? Well, I don't know that the appellate court never said that. It's not based on. I mean, the misstatements were corrected prior to the appellate court's original order here. The parties were in agreement. So, and then the appellate court erred and then defense counsel failed to argue in re-hearing that that was an error. So, you would at least agree that the claim as it related to Compton here was not really outside of the record. It was actually contradicted by the record. No, I don't think. Oh, I'm sorry. I guess I. Well, the appellate court on post-conviction review pointed out that trial counsel actually interviewed Compton the day before trial. Correct. Right? So, this claim was not really outside of the record. It was actually contradicted by the record and arguably without merit, right? Well, the claim was that trial counsel did not investigate the main sole witness in a single identification case here. He didn't investigate him properly. Originally, counsel argued that he didn't interview him at all prior to trial. That is incorrect. He must have spoken to him briefly the day before trial. Again, this is a witness who he's basing his sole defense on, mandatory natural life. But he did interview him prior to the opening statement. The problem is that he didn't interview him adequately. He didn't realize until after he made these promises to the jury that he wasn't going to be a valuable witness because he didn't like the way he spoke and his inconsistent story. And the case law indicates that not interviewing your main sole witness who's going to allegedly support your defense prior to opening statements is ineffective. So, we believe that claim has merit. And we ask that this court let the appellate court do what I think it would have done on correctly. I don't want to sound like I'm throwing blame around here and not accepting. All we want is an adjudication of the merits of these claims for a defendant who's facing a natural. What would you be left with if we affirmed? Just a successive post-conviction petition? Well, to affirm, you'd have to address the constitutional argument. I said, if we affirm. You said you want some type of resolution or hearing. You'd still have the prospect of a successive post-conviction petition? Well, I suppose so. But before we can get to that process, this court would have to address our constitutional argument that Mr. Ligon, by virtue of the due process and equal protection clauses, was entitled to automatic appointment of counsel on these claims, even though he didn't include the claims in his pro se petition. We don't think this is a radical argument contrary to what the state indicates in their brief. It's simply that claims raised in direct appeal aren't going to be adjudicated. It's unusual for an appellate court to say we refuse to adjudicate a claim. But that's going to happen, and if they're going to send them elsewhere, then counsel, at least on those claims, has to go with them to that other process. But simply by stating the essence of our argument, that counsel stays with these claims through their adjudication, you can see it's not going to apply all that often. And we also should not be surprised when an unusual procedure like this takes place, that the rights to appeal and the appellate review and the rights to counsel on appeal, they function a little differently than they would in the normal case. So that's why we think the state's focus on the distinction between collateral and direct in this case is misplaced, because the appellate court, by virtue of adopting this method of review where it sent some claims elsewhere, it erased that distinction. It conscripted the post-conviction court into this process of review. Under your rule, would a judge ruling on a post-conviction petition at the first stage be required to delve into the record to determine whether the appellate court on direct appeal declined to answer any questions? Well, I think trial courts are presumably aware of the appellate court record, of the record in the case. And so in the unusual case that it happened. Wouldn't this require that the court look at the appellate briefs to see what was raised? Well, not in this case, Your Honor, because in this case you do have the appellate court saying we. . . No, but I'm talking about we're going to make a pronouncement here. We're going to say we can't. . . This is not a Rule 23 case where it just applies to you. We're creating precedent. And so we're really instructing trial courts how to deal with these and what they should do when they're faced with. . . I mean, how do we know, how is a trial judge to know on any post-conviction matter whether this person is entitled to counsel or this person is not when the rule is they're not entitled to counsel at the first stage? I mean, I think that's a great question. I think that's why supervisory relief here avoids these questions. But if you're going to address them head on, the procedure adopted here has caused some problems. And, you know, it may very well be that a court may have to look to see if there's claims left unadjudicated on a direct appeal. Or maybe it has to be that appellate counsel has to go the extra yard and write a post-conviction petition, although I don't know. The procedure here raises some troubling questions, all of which fall out if this Court issues the supervisory relief that we request. But the ultimate touchstone has to be full and effective appellate review, as Griffin says, with the assistance of counsel. Because it's effective appellate review that is integral, as Griffin v. U.S. says, integral to whether a defendant had a fair trial. And because Mr. Ligon hasn't had that full appellate review here, it's presently an open question whether he was fairly convicted of the crime for which he's now serving a mandatory natural life sentence. And so because the appellate court record, we believe, is fully developed, as the appellate court in Ligon 2 indicated and indicated its willingness to adjudicate these claims, and because Mr. Ligon has not had the effective appellate review that he's entitled to, we ask this Court to bring this state of affairs to an end, so at some point we can say whether or not he was fairly convicted of this crime. Do you believe that your circumstance fall within the United States Supreme Court decision of Halbert? Yes, Your Honor, we believe Halbert supports us because prior to Halbert, it was generally thought that right to counsel extends no further than the appeal as of right. But Halbert says that's not true anymore. The question is whether the defendant is seeking his appellate review on the merits, and that's what the defendant here was seeking on direct appeal. He raised his claims for counsel. But in order for him to have received that review, he was sent to a different process. So until he receives that review, he has not had the full and adequate effective direct appeal that he's entitled to. No court has extended that case to this situation, has it? This situation has not come up where no court has addressed an appellate court that has adopted a bifurcated procedure like this one did here. So I don't think that's surprising. Again, it goes to show that this shouldn't be a rare case. But, Counsel, Halbert, in that matter, it was the rights of a defendant in direct review, not a collateral review as we have here. But, unfortunately, the distinction between collateral review and direct review in this case no longer exists for these claims because these are direct appeal claims raised by counsel. And it's the appellate court that, like I said, conscripted, brought in the post-conviction court to be a first-tier appellate review court for these claims. Well, that's not what's supposed to happen, and that's very unusual. The Federal Constitution doesn't prohibit that as long as there's counsel on these claims. But in most cases, you're right. In most cases, there is going to be a distinction, and you're not going to have a problem like you do have here. If there are no further questions, we ask, again, that this Court bring the State Affairs to an end and give Mr. Legan a full adjudication, one that the appellate court seems ready and willing to give him up or down on whether he was fairly convicted. If there are no further questions, thank you very much. Good morning, Your Honors, Counsel. My name is Michelle Grimaldi-Stein. I am an Assistant State's Attorney. I represent the people of the State of Illinois. The defendant's entire argument in this case is predicated on a legal fiction of his making. The defendant maintains that his direct appeal was improperly bifurcated when the appellate court declined to consider issues which it deemed better suited to post-conviction review. And based on this fiction, the defendant contends that his post-conviction proceedings were a continuation of his direct appeal, that he was entitled to the appointment of counsel for those proceedings, and that he can now allege on the appeal from the dismissal of his admittedly meritless post-conviction petition. Counsel, what is the procedure for a defendant to follow as hearing a claim on direct appeal that's considered by the appellate court to be more properly heard on collateral review? Since under the Post-Conviction Act only provides for counsel at Stage 2, how does a pro se litigant who may be uneducated get that claim that was deferred on direct review in front of a PC court? Well, first of all, Your Honor, in this case, the opinions that were issued by the appellate court, just those two opinions, especially the published opinion, was a proverbial roadmap for this defendant. It told him, these are the issues that aren't appropriate here. This is what we're lacking. We need to have more evidence as to when this witness became available. I'm talking about a pro se litigant who had no representation. But, Your Honor, that's the pro se litigant's burden. At every post-conviction, that's the pro se litigant's burden. This case is no different, simply because the defendant attempted to raise something on direct appeal, that the appellate court, now could the appellate court have decided this case was procedurally defaulted? Because you, Mr. Defendant, had independent counsel during a post-trial evidentiary hearing on this issue of ineffective assistance of counsel. And this attorney didn't ask those questions. When did you find out about Dennis Compton? How did you find out about him? What efforts did you make to interview him? Now, that attorney, Your Honor, filed a 651C certificate, certainly not a normal certificate for a post-trial proceeding, but this attorney knew that his conduct might be subject to some future scrutiny. And that certificate said, I talked to this defendant, I ascertained what he wanted to raise, I investigated the case, and these are the issues that I could present. So are you saying that he had a post-conviction hearing? I'm saying he had a full evidentiary hearing on the issue in his Krankel post-trial hearing, and he chose not to proceed on the issues that he later improperly raised in a petition for rehearing. Because these issues, the issue that he's now claiming was never decided, is the issue of whether or not his attorney was unconstitutionally unprepared for trial, because he didn't interview the defendant, as counsel just told you, he didn't interview the witness soon enough in advance, far enough in advance of trial to make an adequate determination whether he was going to be a reliable witness. That issue, Your Honor, wasn't even presented in the direct appeal until the petition for rehearing. And that is not an appropriate way to raise an issue. So another one of the fictions that this defendant is raising is that I properly raised an issue on appeal and the court didn't consider it. It wasn't properly raised on appeal. And could the court have said, yes, you procedurally defaulted that issue by not raising it in your post-trial motion? Sure. You procedurally defaulted that issue by not raising it until the petition for rehearing? Yes. The court was trying to give the defendant the benefit of the doubt. That's why if you listen to Justice Quinn's remarks in oral argument in this case below, in that tape that counsel amended the record with, he says what we were trying to do is to give the defendant the opportunity to expand the record, to maybe be able to sustain a claim that if we ruled on it right then, it had to be ruled against him. So we're giving him the benefit of the doubt. He has the briefs from his attorney. He has the trial transcript from the post-trial hearing. He has the court's two opinions. He has the petition for rehearing. And he has the PLA. Are you saying this is better framed as ineffective assistance of counsel? Yes. A better framed of ineffective assistance. He's never raised ineffective assistance of post-trial counsel. And he's never raised ineffective assistance of appellate counsel. That's never mentioned anywhere here. What we're saying is there's simply no evidence, Your Honor, that the defendant wanted to pursue these issues in post-conviction. This is, this entire issue is a creation of appellate counsel when faced with an absolutely and admittedly meritless post-conviction petition. He now wants to go back and appeal something that occurred in the direct appeal. The time for doing that was in his petition for rehearing or in his PLA to this court from the direct appeal. Halbert had been issued already. That was when the appellate court allegedly made the error. Since when do you get to appeal what happened on direct appeal? On an appeal from a post-conviction petition, an entirely different proceeding that was admittedly meritless. That's the crux of this case. And the fact that he asks this court to exercise its supervisory authority to remand for review, he never requested this court to exercise any supervisory authority in the PLA. That wasn't the issue that he asked this court to consider. He waived that as well. So all of these provide an abundance of reasons for this court never to reach these issues and not to remand this case. But the consequences of not reaching his underlying case, his underlying issue, the consequences of not deciding whether Halbert reflects a fundamental change in the U.S. Supreme Court's is going to have a widespread impact because I can guarantee you if you leave open the possibility that every single time an appellate court doesn't reach an issue that it's going to and defers that issue to post-conviction review, you're going to have appellate court cases that routinely appellate attorneys are going to put in issues that it knows the court can't decide so that that mandates the appointment of counsel on PC. It's going to have incredibly widespread effect if this court doesn't reach that issue and if it doesn't decide that the underlying premise in the defendant's argument is wrong, that Halbert does not alter the Supreme Court's analysis of due process requirements from any time from the nature of the proceeding and the source of the right to an issue-based proceeding. Because what the defendant is saying is any time someone presents an issue for first-tier consideration to an error correction court, the defendant is entitled under Halbert to the appointment of counsel for the presentation of that issue. And that's going to mean that under the Post-Conviction Hearing Act in Illinois, because the Post-Conviction Hearing Act requires that it be issues that have not been considered before and never could have been considered before. So it is the first opportunity in Illinois for litigants to present these constitutional issues that are based on matters to horse the record. That court sits as an error correction court. And it's going to mean if you adopt what he says, what the defendant says in this argument, that every single post-conviction petitioner is going to be entitled to the appointment of counsel on first-stage post-conviction proceedings. But if you examine the historical analysis and the evolution of right-to-counsel cases from the U.S. Supreme Court, and if you examine the cases that my opposing counsel has totally ignored, the ones that have followed Halbert, both in the United States Supreme Court and in every single jurisdiction where this issue has come up, and that includes New Hampshire, Massachusetts, Mississippi, the Eastern District of Michigan, the Sixth Circuit Court of Appeals and the Tenth Circuit Court of Appeals, every single one of those courts has said Halbert did not change the analysis. The analysis is still, is it direct review, first review, tier review, or is it collateral review? If it's collateral review, there is a more limited liberty interest that what the due process concerns are not the same as controlled by pretrial cases. The Constitution does not mandate the appointment of counsel. The states are free to determine what procedures comport with due process, so long as they ensure meaningful access to the courts and they do not provide for any barriers to review. Now, if you, that starts with Gideon, Douglas, Ross v. Moffitt, Pennsylvania v. Finley, all of those cases look to the nature of the right, or the nature of the proceeding and the source of the right, and that's what this court did in Porter. More than two decades ago, it looked at the nature of post-conviction proceedings. They're civil in nature. They're not a continuation of the trial. They're usually instituted after the defendant has had a direct appeal. The states have no obligation to provide this. And it determined, this court determined in Porter, that given the nature of post-conviction proceedings, the limited due process rights of the defendants there under, that Illinois, in granting this opportunity for the defendants to prove their convictions are unreliable based on matters to horse the record, that the procedures that we have provided, this low threshold standard of pleading, which this court has spent great lengths at discussing in Hodges and in Brown, and this low standard, and then the appointment of counsel as soon as the defendant meets that low standard, those standards comport with due process, and the defendant's due process protections are protected. If this court examines the U.S. Supreme Court opinion in Osborne, which came down in June of 2009, it will see that the fundamental premise of the defendant's argument, that there is no longer this dichotomy between collateral proceedings and trial proceedings, is absolutely wrong. Because Osborne talked about that the defendant who has been convicted and whose conviction has been affirmed, his liberty interests are diminished. They are not the same as the liberty interests of a free man. And that things like Brady and a prosecutor's responsibility to provide pre-trial information to the defendant doesn't apply to providing this information to post-trial defendants. So Osborne demonstrates that the distinction, that the Supreme Court is still relying on this distinction between the nature of the proceedings to determine the due process rights. And once this court examines Osborne and sees that the distinction still exists, that we're dealing with post-conviction proceedings, we're dealing with a defendant who's been lawfully convicted, his limited liberty interest has been protected by the proceedings that we have in place, that it will see that the defendant is wrong, that this court will agree with every other court in the nation to decide the issue, that Halbert does not require the appointment of counsel, and that this court should not overrule years of established precedent based on an expanded concept of the right to counsel which not even the U.S. Supreme Court has accepted. For all these reasons, the people respectfully request this court to reject the defendant's argument and to affirm the dismissal of his admittedly meritless post-conviction petition. If there are no further questions, thank you. Your Honors, counsel talks at length about a limited diminished liberty interest. But that only comes into effect after full and adequate appellate review under Griffin. That's what Mr. Ligon hasn't had. That's why the distinction between collateral and direct appeal here that some of these U.S. Supreme cases talk about doesn't apply here because those cases say, in those cases they all note that the defendant already had an appellate review with counsel. There was never any suggestion that that review, like in this case, was interrupted. Your Honors, I would also like to point out, it's also, I don't think, correct to presume waiver simply because a dyslexic defendant with a freshman year grade learning level didn't include these claims in his pro se petition. Moreover, I think someone touched on this, he's faced with competing directors from this court because post-conviction claims are supposed to be reserved for claims that weren't raised on direct appeal. Obviously these were. So how is this man supposed to resolve how to proceed here? He already raised these claims. If post-conviction petitions are raised for claims that can't be raised, why should he assume that he has to raise them again? I guess that's the question here. Why should he assume that he has to raise them again? The Constitution doesn't require it. I'd like something clarified. You indicated in your, during your remarks on direct, your opening arguments here, that prior to the time the appellate court entered its order, the misunderstanding or the incorrect statement that counsel had not talked to Compton prior to trial was cleared up. Is that correct? It is correct. But the petition for re-hearing that appears as Exhibit C, I think in the state's brief, says that, still says... It was un-cleared up, unfortunately. It was cleared up prior to the order and then it was un-cleared up, muddied up in the petition for re-hearing. It was, again, they said in a couple different places that counsel had not spoken to Compton. Right, no, I agree. It was cleared up, but then it was muddied up, unfortunately. But I would ask this Court not to hold that against Mr. Ligon. You know, he can't, as the state suggests, he can't file his own pro se motion, even if he was capable of doing so, asking the, you know, correcting his attorney's error there. The key is that these claims don't need any further development of the record. Mr. Ligon to the appellate court, Justice Quinn, indicated that they're ready to adjudicate these claims. And we ask that that adjudication take place. If there's any further questions, thank you. Thank you, counsel. Case number 108-855, be taken under advisement as agenda number.